IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CR-324-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ROBERT HAMPTON TAYLOR, | ) | |
| Defendant. | ) | |

On January 12, 2021, Robert Hampton Taylor ("Taylor" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 243]. Taylor has filed numerous pro se supplements to his motion for compassionate release. See [244, 245, 247, 249, 279, 284]. On April 6, 2022, Taylor filed a motion to expedite [D.E. 272]. On May 12, 2022, Taylor, through counsel, filed a memorandum and exhibits in support of his motion for compassionate release [D.E. 274, 275, 277].[1] On May 18, 2022, counsel filed a supplemental memorandum [D.E. 278]. On June 24, 2022, the government responded in opposition [D.E. 285, 286].[2] On June 30, 2022, Taylor replied [D.E. 288]. As explained below, the court denies Taylor's motion for compassionate release and denies as moot Taylor's motion to expedite.

I.

On March 26, 2007, Taylor and an associate, armed with 9mm handguns, drove to a local bingo parlor in Fayetteville, North Carolina, intending to rob it. A police officer was parked nearby

---

[1] The court grants Taylor's motion to seal [D.E. 276].

[2] The court grants the government's motion to seal [D.E. 287].

when Taylor and his associate arrived at the bingo parlor. After the officer concluded that Taylor's car had a fake license plate, the officer tried to conduct a traffic stop. Taylor, however, ignored the officer, and a vehicle chase ensued until Taylor crashed the car Taylor was driving into a ditch. Taylor and his associate fled the car on foot, but Taylor lost his footing trying to jump a fence, allowing the officer to catch up to him. Taylor fought with the officer and ignored the officer's commands to show his hands. Instead, Taylor jumped up, pulled out his handgun, and shot the officer in the chest at close range. But for the officer's bulletproof vest, the officer would have died. After shooting the officer, Taylor continued to fight with the officer, biting the officer on the neck several times and striking the officer on the head with his baton. An off-duty soldier living nearby heard the fighting and came to the officer's aid by kicking Taylor to the ground. See Presentence Investigation Report ("PSR") ¶¶ 7–8, 12; Sentencing Tr. [D.E. 74] 13–23, 34–36.

On April 21, 2008, pursuant to a written plea agreement, Taylor pleaded guilty to using, carrying, and possessing a firearm during and in relation to a crime of violence and aiding and abetting (count two) and possession of a firearm by a felon (count three). See [D.E. 38, 39, 73]. On October 8, 2008, the court held Taylor's sentencing hearing and adopted the facts set forth in the PSR. See Fed. R. Crim. P. 32(i)(3)(A)–(B); [D.E. 66]; Sentencing Tr. at 6. After resolving Taylor's objections, the court calculated Taylor's total offense level to be 40, his criminal history category to be VI, and his advisory guideline range to be 360 months to life imprisonment on count three and 120 months' consecutive imprisonment on count two. See Sentencing Tr. at 28–29; PSR ¶¶ 74–77. After hearing testimony and victim allocution from the officer Taylor shot and thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Taylor to life imprisonment on count three followed by 120 months' consecutive imprisonment on count two. See Sentencing Tr. at 36–41; [D.E. 67]. Taylor appealed. See [D.E.

2

68]. On July 24, 2009, the United States Court of Appeals for the Fourth Circuit affirmed Taylor's sentence. See United States v. Taylor, 337 F. App'x 342 (4th Cir. 2009) (per curiam) (unpublished).

On March 18, 2014, August 17, 2015, October 13, 2015, February 22, 2016, and February 29, 2016, Taylor filed motions to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255. See [D.E. 82, 102, 105, 107, 108]. On July 30, 2014, and May 11, 2016, the court granted the government's motions to dismiss, dismissed Taylor's section 2255 motions, and denied a certificate of appealability. See Taylor v. United States, No. 5:07-CR-324-D, 2016 WL 11494743 (E.D.N.C. May 11, 2016) (unpublished); Taylor v. United States, No. 5:07-CR-324-D, 2014 WL 3763764 (E.D.N.C. July 30, 2014) (unpublished). Taylor appealed both orders. In both appeals, the Fourth Circuit denied a certificate of appealability and dismissed Taylor's appeals. See United States v. Taylor, 670 F. App'x 150 (4th Cir. 2016) (per curiam) (unpublished); United States v. Taylor, 585 F. App'x 234 (4th Cir. 2014) (per curiam) (unpublished).

After the United States Supreme Court decided Johnson v. United States, 135 S. Ct. 2551 (2015), Taylor continued to seek relief. See [D.E. 128, 130, 132, 136, 137, 138, 152]. On January 5, 2017, the court stayed Taylor's motions pending the Fourth Circuit's decisions in United States v. Walker, 934 F.3d 375 (4th Cir. 2019), and United States v. Simms, 914 F.3d 229 (4th Cir. 2019) (en banc). See [D.E. 163]. On August 29, 2019, after receiving supplemental briefing from the parties, the court vacated Taylor's conviction and sentence on count two. See [D.E. 188] 2–4. The court denied Taylor's request to resentence him on count three. See id. Taylor appealed. See [D.E. 197]. On April 20, 2020, the Fourth Circuit denied a certificate of appealability and dismissed Taylor's appeal. See United States v. Taylor, 801 F. App'x 203 (4th Cir. 2020) (per curiam) (unpublished).

3

On June 20, 2020, Taylor filed a motion under 28 U.S.C. § 2255 based on the Supreme Court's decision in Rehaif v. United States, 139 S. Ct. 2191 (2019). See [D.E. 222]. On July 20, 2020, the court stayed Taylor's motion pending the Fourth Circuit's issuance of a mandate in United States v. Gary, 954 F.3d 194 (4th Cir. 2020). See [D.E. 231]. On June 14, 2021, the Supreme Court reversed Gary in Greer v. United States, 141 S. Ct. 2090 (2021). On September 16, 2021, Taylor, through counsel, withdrew his Rehaif claim. See [D.E. 259].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s timing

requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's

5

age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. Id. § 1B1.13 cmt. n.2.

On June 24, 2020, Taylor applied to his warden for compassionate release. See [D.E. 277-1] 1. On July 13, 2020, the warden denied Taylor's request. See id. at 2. Moreover, the government has not invoked section 3582(c)(1)(A)'s threshold timing requirements. See Muhammad, 16 F.4th at 130. Accordingly, the court considers Taylor's motion on the merits. In support of his motion for compassionate release, Taylor cites the COVID-19 pandemic, his health conditions, his age, his rehabilitation efforts, the need to avoid unwarranted sentencing disparities, and his release plan. See [D.E. 243, 244, 245, 277]. Taylor also argues he would not be an armed career criminal under 18 U.S.C. § 924(e) if he was sentenced today. See [D.E. 277-1]; cf. [D.E. 278].

As for his medical conditions, Taylor has diabetes, kidney disease (stage 3), hypertension, hepatitis B, gastro-esophageal reflux disease, and hyperlipidemia, and he argues these conditions place him at heightened risk of serious infection from COVID-19. See [D.E. 243] 2–5; [D.E. 243-1] ¶¶ 2–3; [D.E. 245]; [D.E. 277] 5–16. Under the "medical condition of the defendant" policy statement, a defendant may qualify for compassionate release if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Other than citing risks for COVID-19, Taylor does not argue that he is unable to provide self-care while incarcerated or that the BOP is not

6

treating his conditions. A note in Taylor's medical records from a January 2022 visit to renew a medication states: "Chart was reviewed, labs were reviewed, and patient is stable on current regimen." [D.E. 274] 3; cf. id. at 6 (medical record from Nov. 2021 showing the BOP is treating Taylor's conditions with numerous medications).

As for Taylor's argument that his health conditions place him at heightened risk of serious infection from COVID-19, Taylor has already contracted and recovered from COVID-19, thereby obtaining natural antibodies. See [D.E. 274] 54; [D.E. 277] 18–19; see also Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021). Taylor has also received three doses of a COVID-19 vaccine, thus diminishing his risk of serious infection from COVID-19, even in light of his health conditions. See [D.E. 277] 16–18; [D.E. 286]; see, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) ("[V]accination does not rule out reinfection, but this does not diminish that vaccination mitigates the risk of COVID-19 complications . . . ."); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("[W]ith access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021), cert. denied, 2022 WL 1611819 (U.S. May 23, 2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Accordingly, granting Taylor compassionate release because of the risk from COVID-19 and his

7

health conditions does not comport with the "medical condition of the defendant" policy statement. See 18 U.S.C. § 3582(c)(1)(A).

As for his age, Taylor is 66 years old. Under the "age of the defendant" policy statement, compassionate release may be warranted if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt. n.1(B). Although Taylor is older than 65, he has not demonstrated that he is experiencing a serious deterioration in physical or mental health because of the aging process. In fact, his medical records from January 2022 describe him as "stable." [D.E. 274] 3. Thus, granting Taylor compassionate release because of his age does not comport with the "age of the defendant" policy statement. Nonetheless, the court considers Taylor's age under the "other reasons" policy statement.

Taylor argues the need to avoid unwarranted sentencing disparities is an extraordinary and compelling reason justifying release. See [D.E. 244] 1–9. Specifically, Taylor cites other defendants who did not receive life sentences for convictions under 18 U.S.C. § 922(g) and apparently contends that if he was sentenced today, he would no longer be sentenced as an armed career criminal under 18 U.S.C. § 924(e). Cf. [D.E. 278].[3]

As for the latter argument, Taylor contends his two Ohio convictions for aggravated armed robbery may not be violent felonies under 18 U.S.C. § 924(e)(2)(B). Cf. [D.E. 278]. Taylor has the

---

[3] As for Taylor's argument that the court misapplied the cross-reference in U.S.S.G. § 2K2.21(c)(1)(A) when it calculated his advisory guideline range, see [D.E. 244] 9–11, the Fourth Circuit affirmed this court's application of that cross-reference. See Taylor, 337 F. App'x at 343–44. Moreover, the court has already considered and rejected arguments concerning the cross-reference that Taylor raised in a section 2255 motion. See [D.E. 93] 7–8.

8

burden of proof. Taylor previously challenged his armed career criminal status in a section 2255 motion and did not argue that his Ohio aggravated robbery convictions were not predicates. See [D.E. 188] 3 n.1. On appeal, the Fourth Circuit denied a certificate of appealability, in part, because the Sixth Circuit held in United States v. Patterson, 853 F.3d 298, 302–05 (6th Cir. 2017), that Ohio's aggravated robbery statute fits within the "elements clause" in section 924(e)(2)(B)(i). See Taylor, 801 F. App'x at 204. The Sixth Circuit employs a modified categorical approach to Ohio's aggravated robbery statute. See United States v. Wilson, 978 F.3d 990, 999 (6th Cir. 2020). Ohio's aggravated robbery statute contains three subsections that make it unlawful, in relevant part, to commit or attempt to commit a theft offense and "(1) [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; (2) "[h]ave a dangerous ordnance on or about the offender's person or under the offender's control; [or] (3) "[i]nflict, or attempt to inflict, serious physical harm on another." Id. at 995. Taylor has presented no Shepard documents to the court concerning his Ohio convictions in support of his argument. However, the PSR's descriptions of the offenses are instructive. See PSR ¶¶ 23–24; cf. PSR Add. ¶ 1.[4] Taylor likely sustained his first aggravated robbery conviction under the first subsection of Ohio's aggravated robbery statute because Taylor "used a handgun to commit an unspecified aggravated robbery." PSR ¶ 23. Taylor likely sustained his second aggravated robbery conviction under the third subsection because Taylor "attempted to rob a gas station . . . during which he inflicted to attempted to inflict harm" on a person present at the robbery. Id. ¶ 24. Based on these descriptions, both aggravated robberies apparently involved a theft that had as an element the use or attempted use of physical force against the person of another.

---

[4] Although Taylor initially objected to probation classifying him as an armed career criminal in the PSR, Taylor withdrew that objection at sentencing. See Sentencing Tr. at 6.

9

See 18 U.S.C. § 924(e)(2)(B)(i); Wilson, 978 F.3d at 993–99; United States v. Walls, 781 F. App'x 398, 403 (6th Cir. 2019) (unpublished); Patterson, 853 F.3d at 302–03.

As for unwarranted sentencing disparities with other defendants who have convictions under 18 U.S.C. § 922(g), the court explained at Taylor's sentencing hearing why the advisory guideline range and the 18 U.S.C. § 3553(a) factors justified a life sentence. See Sentencing Tr. at 25–28, 36–38. The Fourth Circuit affirmed this court's judgment. See Taylor, 337 F. App'x at 343–44. Any resulting disparity is warranted. After all, not every felon who possesses a firearm shoots a law enforcement officer in the chest at close range. Cf. United States v. Palmer, 820 F.3d 640, 644–46 (4th Cir. 2016). Thus, Taylor's arguments fail.

The court assumes without deciding that COVID-19, Taylor's health conditions, his age, his rehabilitation efforts, and his release plan constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Taylor's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Taylor is 66 years old and is incarcerated for possession of a firearm by a felon (count three). See [D.E. 67, 188]. Taylor's offense conduct was extraordinarily serious and included attempting to rob a business, shooting a law enforcement officer in the chest at close range, biting the officer in the neck multiple times, and striking the officer repeatedly on the head with the officer's baton. See PSR ¶¶ 7–13. Taylor's offense conduct was horrible, but it was nothing new. For example, before this offense conduct, Taylor had sustained a conviction for assault with a deadly weapon

10

inflicting serious injury after he shot someone in the back with a .32-caliber pistol, lodging a bullet in his victim's spinal column. See id. ¶ 22. Taylor also has convictions for petit larceny, assault on a female (two counts), petit theft, common law robbery, aggravated robbery (two counts), theft, and criminal contempt. See id. ¶¶ 17–27. Taylor committed his latest violent criminal conduct at age 51, defying relevant recidivism statistics. Taylor also has a poor record on supervision, having engaged in new, violent criminal conduct (i.e., two aggravated robberies) while on state probation. See id. ¶¶ 22–24.

Taylor has taken some positive steps while federally incarcerated. See [D.E. 243] 5–6; [D.E. 243-1] ¶ 8; [D.E. 244] 11–13; [D.E. 277] 25; cf. Pepper, 562 U.S. at 480. For example, Taylor has taken education and vocation training courses and has received positive work evaluations. See [D.E. 277-3, 277-4, 277-5]. Moreover, Taylor has not incurred any disciplinary infractions. See [D.E. 277-6].

The court must balance Taylor's rehabilitation efforts with his serious criminal conduct, his terrible criminal history, his poor record on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, No. 20-1650, 2022 WL 2295029, at *12 (U.S. June 27, 2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Taylor's potential exposure to COVID-19, his natural antibodies, his vaccinated status, his medical conditions, his age, and his release plan. See [D.E. 277-2] (letter from Taylor describing release plan). The court recognizes that Taylor has a supportive mother who would assist him if released. See [D.E. 277-8]. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Taylor's arguments, the government's persuasive response, the need to punish Taylor for his serious criminal behavior, to

11

incapacitate Taylor, to promote respect for the law, to deter others, and to protect society, the court denies Taylor's motion for compassionate release. See, e.g., Chavez-Meza, 138 S. Ct. at 1966–68; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

III.

In sum, the court GRANTS the parties' motions to seal [D.E. 276, 287], DENIES defendant's motion for compassionate release [D.E. 243], and DENIES as moot defendant's motion to expedite [D.E. 272].

SO ORDERED. This 5 day of July, 2022.

JAMES C. DEVER III
United States District Judge

12

Case 5:07-cr-00324-D Document 289 Filed 07/05/22 Page 12 of 12